Stewart, J.
Was the Court of Appeals in error in reversing the order of the Probate Court and ordering it to admit the will to probate 1
The will was found on the evening of the day of decedent’s death by her grandson, who was interested in having the will probated, in a drawer of a steel file located in the upstairs sitting room of decedent’s home, where she had lived continuously for many years. Decedent had taken the will into her possession and custody at the time of its execution and, so far as the record shows, she so kept it until her death.
The date of the execution as disclosed by the will is July 19,1945.
When the will was so found by decedent’s grandson, it was in this mutilated condition. He removed the will from the file in the presence of witnesses, had it photostated and returned it to the file the next day likewise in the presence of witnesses.
On the following day, it was found by a son of the decedent.
At the hearing in the Probate Court, only evidence *495 of witnesses called by the proponent of the will was permitted, although counsel for appellant was permitted to cross-examine them.
A handwriting expert gave as his opinion that the “XV’ on the will were recently made by some one other than decedent, and that the tearing off of a part of the signature was recent. The proponent also offered evidence tending to show that decedent stated at various dates shortly prior to her death that she had a will but intended to alter or change it.
The principal beneficiary in the will, who was decedent’s secretary, had died in the year following its execution, and one of proponent’s witnesses, who had been a nurse and employee of decedent for nearly six years and was so close a friend that decedent had attempted to persuade the witness to live with her as a companion, testified that decedent had told her on two occasions that she had no will.
On cross-examination, the testimony of the expert was, as to the accuracy of the estimate of the time when the mutilation occurred, in some degree contradicted and weakened. There was not a scintilla of positive evidence that any one other than decedent mutilated the will, although evidence was offered to show that opportunity to make such mutilation was afforded by reason of the fact that in the last few days of her life decedent slept downstairs and her upstairs apartment was open to access by several of her heirs and relatives.
The statutes which are applicable to the probate of lost, spoliated or destroyed wills are as follows:
Section 10504-35. “The Probate Court may admit to probate a last will and testament which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated or destroyed subsequent to the death of such testator, or after he became incapable of making *496 a will by reason of insanity, or before the death of such testator if testator’s lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony, and it cannot be produced in court in as full, ample and complete a manner as the court now admits to probate last wills and testaments, the originals of which are actually produced therein for probate. ’ ’
Section 10504-36. “When application is made to the Probate Court to admit to probate a will duly executed, and lost, spoliated or destroyed, the party seeking to prove it shall give a written notice to the surviving spouse and to the next of kin of the testator, if any, known to be resident of the state, and to all persons whose interest it may be to resist the probate, known to reside in the county where the testator resided at the time of his death, not less than five days before the day on which such proof is to be made, or give notice, by publication in a newspaper printed in the county, not less than thirty days before the day set for hearing such proof.”
Section 10504-37. “In such cases, the court shall cause the witnesses to such will and such other witnesses as any person interested in having it admitted to probate desire, to come before the court. .They shall be examined by the probate judge, and their testimony reduced to writing and filed by him in his court. When necessary so to do, because witnesses reside out of its jurisdiction, or who, though within such jurisdiction are infirm or unable to attend, the court may order their testimony to be taken and reduced to writing by some competent person, which testimony shall be filed in such court.”
Section 10504-38. “If upon such proof, the. court is satisfied that such last will and testament was executed in the mode provided by the law in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death *497 of the testator, and has been lost, spoliated or destroyed since his death, or his becoming incapable as aforesaid; or before the death of the testator if his lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony, such court shall find and establish the contents of such will as near as can be ascertained, and cause them and the testimony taken in the ease to be recorded in such court. ’ ’
Although application to probate the will was made pursuant to' the statute applicable to wills regular upon their face, the hearing before the probate judge was in accord with the above statutes and the proponent acquiesced in offering the will as a spoliated one.
At the beginning of the hearing, the probate judge stated that the proponent would be required to establish the right to have the will admitted to probate by ‘ ‘ clear and convincing proof. ’ ’ That statement is justified by the decision of this court in the case of Cole v. McClure, 88 Ohio St., 1, 102 N. E., 264, the syllabus of which reads as follows:
“1. On review of the record of a trial below, this court will not consider the mere weight of the evidence, but where the law requires in the particular case a higher quality and quantity of evidence than is sufficient in ordinary cases to support a judgment by the preponderance of proof, this court will consider whether the evidence attains to that high degree of probative force and certainty. (Ford v. Osborne, 45 Ohio St., 1, followed and approved.)
“2. To establish a lost or destroyed will the evidence of its execution and its contents must be clear, strong, positive, free from bias, and convincing beyond a reasonable doubt.
“3. Where a will has been lost or destroyed before the death of the testator, the law presumes that he revoked it; and where he became insane after he made *498 the will, the evidence to overcome this presumption must be certain, satisfactory and conclusive that it was unrevoked and in existence after he became ‘incapable by reason of insanity to make a will.’ ”
The same rule applies with reference to a will which has not been lost or destroyed but has been mutilated, even though it is proved, as it was in this case, that decedent properly executed it.
As the will was offered for probate in a mutilated condition, was in decedent’s possession and custody since its execution, and was found among her effects after her death, there is a strong presumption that the mutilation was by decedent with the intent to revoke the will, and it became the burden of the proponent to satisfy the Probate Court that the will was unrevoked and in existence at the time of decedent’s death. Cole v. McClure, supra, and Behrens v. Behrens, 47 Ohio St., 323, 331, 25 N. E., 209, 21 Am. St. Rep., 820.
In 57 American Jurisprudence, 378, Section 550, it is stated:
“It is generally agreed that if a will produced for probate, which is shown to have been in the custody of the testator after its execution, was found among the testator’s effects after his death, in such a state of mutilation, obliteration, or cancellation as represents a sufficient act of revocation within the meaning of the applicable statute, it will be presumed, in the absence of' evidence to the contrary, that such act was performed by the testator with the intention of revoking the instrument. * * * As stated, when a will is found in a mutilated condition in the possession of the testator after his death, and there is no evidence that the mutilation was the act of another person, the court will presume that it was done by the testator with intent to revoke the instrument. It would be inconsistent to hold that a total absence of the instrument sought to be probated raises a presumption that the testator destroyed it with intent to revoke it, and to refuse to *499 hold that the production of a mutilated instrument, shown to have been in the possession of the testator, cannot raise a presumption that the mutilation was done by the testator with intent to revoke the will. Whatever presumption arises from acts of cancellation or mutilation is rebuttable, but the burden of the rebuttal rests upon the proponent.” See, also, annotation, 165 A. L. R., 1202, which is in practically the same language and in support of which cases are cited from federal courts and from courts of 24 states, England and Canada.
In the case of Crosby v. Crosby, 10 C. C. (N. S.), 57 (affirmed without opinion, 80 Ohio St., 721, 89 N. E., 1118), the Circuit Court for Ashtabula county held in the syllabus, which is entirely supported by the opinion:
“Where a will after its execution remains in the possession of the testator until his death, at which time it is found among his papers with his name erased, the presumption is that the testator erased his name, and that he did so with the intention of revoking the will.”
It is stated as follows in 57 American Jurisprudence, 380, Section 551:
“The presumption, however, is not dependent upon proof that the will was in any particular place, provided it is somewhere in the personal effects of the deceased, or in her sole custody, and not in the possession of others. The instrument, moreover, need not have been in the exclusive custody of the testator in order for the presumption to prevail. If it appears that the instrument was in a repository accessible to the testator and another person, it will be presumed that a mutilation or cancellation of the instrument was done by the testator with intent to revoke.”
That statement is apparently based upon the principle that fraud or crime will not be presumed in the other person.
In the present case, decedent’s will was executed at *500 her home, was retained by her until she died, and after her death was found mutilated with her papers in a drawer of a steel file in her home.
Appellant claims that the Court of Appeals exceeded its jurisdiction under Section 6, Article IV of the Ohio Constitution, where, in an appeal on questions of law, it entered an order remanding the cause to the Probate Court with directions to admit the will to probate, and that the Court of Appeals erred when, in an appeal on questions of law, it found on the weight of the evidence facts contrary to those found by the Probate Court, the appellant contending that in such an appeal the appellate court is bound by the findings of fact in the trial court, unless the appellate court finds the judgment of the trial court to be against the weight of the evidence, in which case the appellate court can not enter a final judgment but must reverse and remand.
There was no finding of fact as such by the Probate Court. However, it filed a memorandum opinion reviewing the evidence considered by it and held that, although there Avas testimony to the effect that at times the decedent expressed an intention of altering her will or making a new one, the evidence offered by the proponent, consisting of only suspicions, inferences and innuendoes as to the tearing by some one other than the decedent, falls short of overcoming the presumption of law that the Avill was mutilated by decedent.
The Court of Appeals in its journal entry found “that said will was executed and attested in the mode provided by law, that said testatrix was of sound mind and memory and not under any restraint when said Avill was executed by her, that said Avill was signed and witnessed as provided by law, and that the same was unrevoked at the death of said testatrix.”
Each of the judges of the Court of Appeals wrote an *501 opinion, two of them in reversal of the judgment of the Probate Court and one a dissent.
There was no finding of facts and the basis of reversal must be found from the statements in the opinions. Each judge had an entirely different viewpoint from the others. One of the majority judges said:
“Under the facts disclosed, we find no basis for entertaining the presumption, that testatrix herself mutilated the purported will, particularly in the light of her declaraions over a period of approximately six years from the date of execution of the paper writing in July, 1945 until her death in May, 1951 displaying a steady interest in certain of her blood relatives to the exclusion of others.”
The judge stated further that “there was insufficient evidence to authorize the Probate Court to grant the application for probate of the proffered document as a spoliated will, and the Probate Court properly refused to admit the will on such basis.”
However, the judge stated that the Probate Court “should have received it for probate as the last will and testament of the testatrix under Section 10504-22, General Code, since a prima facie case for the probate of the will as an ordinary will was made.”
The weakness in that viewpoint is that, although a prima facie case for the probate of an ordinary will was made, the will in the present case is not an ordinary will but a mutilated one, and since, under the circumstances herein described, there was a strong presumption that decedent had mutilated the will animo revocandi and since the judge found that there was insufficient evidence to authorize the probating of the will as a spoliated one, the judge should have voted for affirmance of the judgment of the Probate Court.
The other majority judge reviewed the evidence and in his opinion said that the Probate Court upon the *502 evidence should have been “satisfied” that the act of spoliation took place after the death of the deceased. The judge stated:
“The word ‘satisfied’ used in Section 10504-37, General Code, in describing the quantum of proof necessary to rpake out a prima facie case as to when spoliation occurred must be construed liberally in favor of admitting the will to probate. The admission of the will to probate is only the first procedural step provided as the basis for a judicial determination of whether a paper writing is or is not the last will and testament of the deceased where the validity of the will is challenged as provided by law. The jurisdiction to determine the validity of a will is, by statute, placed in the Common Pleas Court and not the Probate Court. It must therefore follow that, in conducting an ex parte inquiry to determine whether or not the statutory requirements for probating a will are present, the court is required to admit the will to probate if the evidence in favor of the presence of such statutory requirements is sufficient to make out a prima facie case. Here the evidence is sufficiently inclusive to require that result. ’ ’
The opinion of the judge makes no distinction in the quantum of proof necessary to admit a will regular on its face to probate and that to admit a spoliated one. Such holding necessarily disregards the strong presumption of revocation which results from the unexplained mutilation of a purported will which has been in the possession and custody of the one who made it from the date of its execution until his death. The opinion disregards the previous decisions of this court which recognize the existence of the presumption of revocation under such circumstances. See Cále v. McClure, supra, and Behrens v. Behrens, supra. See, also, Section 10504-47, General Code, which reads in part:
“A will shall be revoked by the testator tearing, *503 canceling, obliterating or destroying it •with, the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction * * * but nothing herein contained shall prevent the revocation implied by law, from subsequent changes in the condition or circumstances of the testator.”
In the dissenting opinion it is stated:
“It is crystal clear that the document before the court had been mutilated to such an extent by the tearing of the signatures and the crossing out of the identifying initials that it could not be accepted for probate as an ordinary will where only a prima facie case of validity is required under the provisions of Sections 10504-15 through 10504-22, inclusive, General Code.”
Then, after saying that under the circumstances of the present case there was a strong presumption that decedent’s will had been mutilated by her and after considering what is meant by the terms, “satisfy” and “satisfactory evidence,” as defined by this court in Cole v. McClure, supra, the dissenting judge stated:
“We must conclude that the probate judge having heard all of the evidence at first hand was in a position to judge the credibility of the witnesses, their candor, or want of candor, their interest in the cause and the weight to be given to their testimony.
“There is no direct evidence in the record showing a spoliation by someone other than the testatrix. The most that cán be said in this respect is that a suspicion of spoliation is raised, but the evidence produced in support thereof falls short of overcoming the presumption of revocation.”
This last quotation is in exact agreement with the opinion of the first majority judge, and if he had considered this cause upon the theory of a mutilated will he and the dissenting judge would have been in agreement.
The journal entry of the Court of Appeals does not *504 indicate that the reversal was on the ground that the judgment of the Probate Court was against the weight of the evidence. As hereinbefore indicated, the reversal constitutes a finding by the Court of Appeals of all the necessary facts establishing the validity of the will as a valid one and a direction to the Probate Court to admit it to probate.
Unless it found that the Probate Court had not properly applied the law, the Court of Appeals was limited, in any event, to a reversal of the judgment of the lower court on the weight of the evidence and a remand. See In re Estate of Johnson, 142 Ohio St., 49, 49 N. E. (2d), 950; State, ex rel. Squire, Supt., v. City of Cleveland, 150 Ohio St., 303, 82 N. E. (2d), 709; and In re Estate of Murnan, 151 Ohio St., 529, 87 N. E. (2d), 84.
The opinions of the judges of the Court of Appeals disclose that the majority of the court found that the proper forum for the decision of the question of fact presented by the record is the Common Pleas Court in an action to contest the validity of the will. As this puts upon the contestants the burden of disproving the presumption resulting from the admission of the will to probate and removes from the proponent the obligation to establish the right to probate the will, such a conclusion disregards the statutes hereinbefore set forth in which a hearing is provided to determine whether the will is entitled to probate. That question must be settled favorably to the proponent before the burden is cast upon the contesters to show that the will is invalid.
Under the circumstances of the present case, there is a strong presumption that the will was mutilated by the decedent animo r evo candi. 'To overcome that presumption the proponent of the will had to satisfy the Probate Court that the will was spoliated after decedent’s death or, if such spoliation occurred before the death, the proponent had to prove by clear and *505 convincing evidence that decedent lacked knowledge of such spoliation. Since, under the conflict of evidence produced, the Probate Court found that the presumption was not overcome, and since the Court of Appeals did not reverse the judgment of the Probate Court specifically upon the weight of the evidence, even though it might have done so without a motion for new trial under Section 11576-1, General Code, it follows that the judgment of the Court of Appeals must be reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

Judgment reversed.

Weygandt, C. J., Middleton, Taet, Matthias, Hart, and Zimmerman, JJ., concur.